Frederic T. Commoss, Respondent, *v.* William C. Pearson, Individually and as Surviving Partner of the Firm of D. G. Gautier and Company, Appellant.

First Department, February 6, 1920.

**Sales — liability of purchaser for articles manufactured after notice to both seller and mill to suspend manufacture until further notice — sufficiency of notice — right of purchaser to suspend order for manufacture — effect of inability to obtain government permit for export upon contract to make shipment — stipulation for payment before delivery.**

In an action by a seller against the purchaser to recover for steel plates which were to be shipped " during August, unforeseen delays permitting,   *   *   * providing export embargoes or government restrictions do not interfere with shipment from the mill," it appeared that said plates were purchased for export and that after the contract was made the government promulgated a rule by which permits to export the plates would expire upon August fifteenth. It being impossible for the mill to manufacture said plates within the time limit, defendant's representative on the fourteenth of August telegraphed to said mill that it was impossible to get an extension of the export permit and to do nothing with the order for the present. The superintendent of the mill replied on the sixteenth of August as follows: " We will hold the order until we hear from you again." At the same time the defendant telephoned to the office of the plaintiff and not finding him gave a similar message to one who was in the habit of receiving communications about plaintiff's contracts and reporting them to him. At this time none of the plates had been manufactured and nothing whatever done by the mill in execution of the contract. Thereafter, however, and during the last three days in August and during September plates for which this action is brought were manufactured by the mill without any notice from the defendant. On all the evidence,

*Held,* that the defendant gave sufficient notice both to the plaintiff and to the mill to proceed no further until notified, and, therefore, is liable only for such damages as had accrued upon the contract at the time of the notice;

That sufficient was shown to make at least a question of fact as to whether the person who received the message for the plaintiff was not so far his agent as to make the notice binding on him.

A party has the right to order suspended the manufacture of an article which he has purchased until further notice and thus relieve himself of his liability to pay for the completed article.

The defendant cannot complain that the plates were not tendered in August because it had directed the suspension of their manufacture until further notice.

The contract was not illegal because apparently the parties did not intend to make shipment without a government permit.

It was lawful for the parties to stipulate that payments should become due forthwith after the plates were manufactured and before delivery.

APPEAL by the defendant, William C. Pearson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of May, 1919, upon the verdict of a jury rendered by direction of the court at the close of the case, and also from an order entered in said clerk's office on the 2d day of June, 1919, denying defendant's motion for a new trial made upon the minutes.

*Henry W. Taft* of counsel [*George Coggill* with him on the brief; *Randolph Parmly*, attorney], for the appellant.

*Frank S. Gannon, Jr.*, of counsel [*Robert L. Redfield*, attorney], for the respondent.

SMITH, J.:

The action is brought by the seller against the purchaser to recover for 220 net tons of steel plates " for shipment during August, unforeseen delays permitting, at 10¼ cents per pound f. o. b. cars mill freight equalized with Pittsburgh. Terms: Net cash on presentation of invoice and inland bill of lading, providing export embargoes or government restrictions do not interfere with shipment from the mill. This business would have to be entered, however, with the understanding that should the mill be unable to ship for any reason through no fault of their own, that the material would be paid for as soon as rolled or on presentation of invoice, as I sell the material f. o. b. mill and cannot take the responsibility because of being unable to ship due to railroad embargoes or government restrictions." To this was answered: " We beg to say your letter is all in accordance with our understanding and is hereby accepted."

The letter from the plaintiff from which the above quotation is taken is dated July 11, 1917, and the defendant's letter is dated July 16, 1917.

It was understood between the parties that these plates

were to be shipped to a party in California and from there exported to Japan. After this contract was made the government promulgated a rule by which permits to export any plates to Japan would expire upon August fifteenth. They at once notified the plaintiff who communicated with the National Enameling and Stamping Company, the manufacturers, asking if the goods could not be prepared for shipment to come within the date of August fifteenth. This was stated to be impossible, and as the contract called for shipment at any time during August, the defendant could not enforce the manufacture and delivery in time to come within the date of the expiration of the government's license. The defendant went to the National Enameling and Stamping Company, which we may call the mill, with a letter of introduction from the plaintiff, and it was there discussed that possibly the time might be extended. Thereupon the defendant's representative went to Washington, but found that he could not get the extension which he required. He telegraphed to the mill that it was " impossible to get extension export permit shipment of plates," and on the same day, to wit, the fourteenth day of August, wrote to the plaintiff in confirmation of the telegram sent upon the same date, stating that they were unable to get any favors from the department, but stating: " It is the general opinion, however, in the trade here that the Jap Commission just arriving in this country is likely to remedy the matter as soon as possible or come to some agreement with the Government. However, this is only surmised and cannot be taken for granted. Under the circumstances, please do nothing with order 100-D for the present." This was the order in question. In answer to this letter of August fourteenth, the mill, through Mr. Niedringhaus, the superintendent, wrote to the defendant on August sixteenth, as follows: " Dear Sir: We have yours of the 14th confirming your telegram. We are sorry to hear that you could not get an extension at this time. *We will hold the order until we hear from you again.* We hope that the Japanese Commission will be able to make some agreement with our Government so that we can export plates again." At the same time the defendant telephoned to the office of the plaintiff, and not finding the plaintiff, gave the message to one MacFarland,

telling him of the situation and of the order given to the mill. MacFarland replied that he would communicate with the plaintiff the contents of the telephone message. At this time none of the plates had been manufactured and nothing whatever done by the mill in execution of this contract with the plaintiff in the defendant's behalf. Thereafter, however, and upon the last three days in August, the mill did manufacture about 58½ tons. Prior to September fifteenth, 183½ more tons had been rolled and the total in tons rolled in August and September, up to September fifteenth, was 242 net tons. This was done without any notice whatever from the defendant, and apparently the first information that the defendant had of the same was by a letter dated September 11, 1917, from the plaintiff to the defendant, that the plates had been rolled and were ready for delivery.

By subdivision 4 of section 145 of the Personal Property Law (as added by Laws of 1911, chap. 571) it is provided: " If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

Upon being notified that the plates were ready for shipment by the letter of September eleventh, the defendant first notified the plaintiff that they expected to receive permits for the shipment of the plates early the coming week and upon receipt of the same would immediately communicate with them. Thereafter apparently there was some telephonic communication in reference to the notice which had been given to the mill and to plaintiff not to proceed with the contract, evidenced by the letter of September twenty-fourth from the plaintiff to the defendant, in which the plaintiff claims never to have heard of the order not to proceed with the work until notified. To my mind, however, the defendant gave a sufficient notice,

both to the plaintiff and to the mill, to proceed no further until notified. This the mill promised to do under the letter of August sixteenth to the defendant. This would seem sufficient notice, irrespective of the telephonic communication with MacFarland, because if the mill had this notice, the mill could not proceed to manufacture the plates and hold the plaintiff responsible therefor, with full notice that plaintiff's customer had directed that the manufacture of the plates be stopped until further notice. We are of opinion also that notice to MacFarland was sufficient as notice to plaintiff not to proceed further until notice. Plaintiff was secretary and manager of Pierson & Co., Inc., but did some personal business also. MacFarland was an employee of Pierson & Co., Inc., and occupied a desk in the same room with plaintiff. He wrote for plaintiff at least one letter to the mill about the contract involved in this action. Plaintiff testified that MacFarland had no interest in his personal contracts " except of a clerical nature," but he was in the habit of receiving communications about plaintiff's contracts and reporting them to plaintiff and plaintiff expected him to report anything that came in about his contracts while he was away. At the time of this notice plaintiff was away on his vacation. While there is other evidence of the relations of plaintiff and MacFarland, sufficient has been shown to make at least a question of fact as to whether MacFarland was not so far the agent of plaintiff as to hold binding on plaintiff any notice given to MacFarland for him.

The court refused to allow the defendant to go to the jury as to whether this notice was a sufficient notice, that is, as to whether MacFarland occupied such a relation to the plaintiff as to be his agent for the purpose of receiving the communication. It may be that the plaintiff himself never personally got this notice and never knew of the same until after the plates had been manufactured, but if his agent in charge of his office, with authority to receive such a message for him, was notified not to proceed, and further if the mill which was manufacturing the plates was also notified not to proceed and had promised not to proceed until further notice from the defendant, the notice given would absolve the defendant from damages for material and the labor in

manufacturing these plates. Under all the authorities a party has the right to order · suspended the manufacture of an article which he has purchased until further notice, and thus relieve himself of his liability to pay for the completed article. This reasoning would lead to the conclusion that the defendant had been wrongfully charged with the full purchase price of these plates, because of the notice given to suspend the manufacture until further notice, which further notice was never given.

There are other questions raised which, in view of a possible new trial may become relevant. The defendant cannot complain that these goods were not tendered in August, because the defendant itself directed the suspension of their manufacture until further notice. The contract was not illegal because apparently no one intended to make shipment of these goods without a government permit. The parties might lawfully stipulate that the moneys should become due forthwith after the plates were rolled and before delivery.

In the view that we take of this case, it is not necessary to decide whether under section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571), the plaintiff must endeavor to find a market before suing for the purchase price, inasmuch as we are of the opinion that the defendant had the right to suspend the manufacture, and did so suspend the manufacture of the plates, and has at no time requested either the plaintiff or the mill to proceed further to manufacture the same. Undoubtedly all parties believed that the embargo upon the exportation of these plates would soon be released and they acted accordingly, but neither the mill nor the plaintiff had the right to proceed after having been notified to suspend the manufacture until further notice from the defendant. If that further notice were delayed an unreasonable length of time it would amount to an absolute repudiation, but when the mill acquiesced in the request to suspend the manufacture until further notice, and when such a request, transferred to the plaintiff's agent, brought no protest, the defendant might properly rest upon its liability for such damages as had accrued upon the contract at the time the notice was given, and the plaintiff cannot justly hold the defendant to any greater damages.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

DOWLING, LAUGHLIN, MERRELL and PHILBIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.